**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ELENA LEVIN,** | ) | |
| | ) | **Jury Requested** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** |
| | ) | |
| **ALTISOURCE SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff Elena Levin ("Plaintiff"), by and through her attorneys, CTM Legal Group, LLC, for their Complaint against Altisource Solutions, Inc. ("Defendant," "Company," and "Employer"), and states:

### Jurisdiction and Venue

1. Plaintiff's claims under Title VII, actionable under 42 U.S.C. § 2000e, and 29 U.S.C.A. § 623 present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. This court is a proper venue of Plaintiff's claims under 28 U.S.C. 1391 (b), because the unlawful conduct giving rise to these claims occurred in this district.

3. Plaintiff is an individual residing at all relevant times in Cook County, Illinois.

4. Defendant is a corporation headquartered in Georgia and operating internationally, including in Cook County, Illinois.

5. At all times, Plaintiff has worked for Defendant while she was located in Cook County, Illinois.

### The Parties

6. Defendant is a multi-national company with offices in various locations, including Atlanta, Georgia. Defendant's address in Atlanta, Georgia is 1000 Abernathy Road NE, Atlanta, Georgia 30328.

7.  Defendant is engaged in the business of selling bank-owned/foreclosed properties at high volume and buys and sells Real Estate Owned ("REO") properties in all 50 states.

8.  Defendant operates, or has operated at all times relevant, under various subsidiary companies/divisions, including RealHome Services and Solutions ("RHSS"), owners.com, hubzu.com, and Altisource Online Auctions ("AOA").

9.  Plaintiff is a 53-year-old Jewish woman.

10. Plaintiff's employment with Defendant was first terminated on April 6, 2020, and then extended until May 15, 2020, when Plaintiff was terminated again, for the final time.

11. Plaintiff was treated less favorably and subjected to adverse actions in a manner different from similarly situated employees who were not in her protected class and who did not report Company compliance issues.

**Factual Allegations**

12. Plaintiff started working as a "Broker" for the Defendant on May 2, 2016,

13. At the time she was hired, Plaintiff held an Illinois Managing Broker license for four years and specialized in selling REO properties.

14. During Plaintiff's employment, Defendant employed approximately 25 Brokers throughout the United States.

15. Brokers are required to list properties, manage the listings, and assist buyers and sellers with completing transactions in the REO market.

16. Brokers must be licensed in the state in which they are listing properties.

17. Defendant's Brokers close, on average, between 200 and 500 real estate transactions per year.

18. Defendant assigns a "Qualifying Broker" for each state and each subsidiary company/division that (1) supervises all Brokers who list properties for Defendant in that state; (2) complies with any state-specific requirements for real estate buyers and sellers; and (3) is accountable to each state's regulatory agency on regulatory and compliance issues.

19. Plaintiff's first assignment was in Defendant's Investor Services Division ("BRS").

20. In October 2016, Plaintiff was transferred to the RHSS REO division.

21. Throughout her employment with Defendant, Plaintiff met or exceeded all the legitimate

2

business expectations of her position(s) and regularly performed in the top half of all brokers at the Company.

22. At all times relevant, Plaintiff held 15 certifications, and was, at all times applicable, qualified to work as a real estate broker in the following states: Alabama, Idaho, Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Montana, New Jersey, North Carolina, South

23. Plaintiff was licensed in more states than most of Defendant's other Brokers.

24. Plaintiff held five Qualifying Broker roles, the most a Broker can hold.

25. Plaintiff never received a negative performance review.

26. From approximately April 2018 - January 2020, Plaintiff reported to Senior Manager Cheryl Rabin ("Rabin").

27. From approximately January 2020 – May 2020, Plaintiff reported to Senior Manager Neven Spralja ("Spralja").

28. Around August 2019, Rabin stepped down as Qualifying Broker for RHSS in Illinois and Plaintiff became Qualifying Broker for Illinois.

29. Around November 2019, Defendant hired Mason Legendre ("Legendre") (male, about 40 years old) as Plaintiff's Director; however, Rabin remained Plaintiff's direct supervisor.

30. After becoming Qualifying Broker in Illinois, Plaintiff was subjected to harassment, disparate treatment, and retaliation because of her age, sex, and religion, and because she complained of disparate treatment and attempted to report unlawful activities undertaken by Defendant and its employees.

31. Defendant runs property transactions through the website "hubzu.com."

32. In September 2019, Plaintiff and another Broker noticed a potential problem with fraudulent buyers in New Jersey who were manipulating the price of properties.

33. Plaintiff believed it would be a breach of law, as a well as a breach of her fiduciary duty as sellers' agent, to allow such transactions go forward.

34. Plaintiff requested a meeting and reported the issue to her supervisory staff, including Rabin, David Torres, and Norman Remedios.

35. Despite assurances to the contrary, the Defendant ignored Plaintiff's legal and compliance concerns.

36. Upon information and belief, numerous Defendant employees were aware of the fraudulent activities prior to Plaintiff communicating her concerns yet chose to ignore the ongoing practices.

37. Upon information and belief, Defendant later sued the parties who orchestrated the allegedly fraudulent scheme that Plaintiff previously complained about.

38. Despite the Defendant's lack of action in 2019, Plaintiff, to her financial detriment, refused to sign off on transactions involving these suspicious practices.

39. After becoming Qualifying Broker in Illinois, Plaintiff discovered multiple violations of industry licensing law.

40. For example, in September 2019, Defendant put forth candidate Sylvia Parker ("Parker") (female, non-Jewish, age unknown), to replace the former managing broker for subsidiary "owners.com."

41. As Illinois Qualifying Broker, Plaintiff was directed to sign off on Parker's license transfer to Illinois.

42. Parker's application reflected that she did not have the requisite experience to obtain a managing broker's license in Illinois and that hiring her would violate Illinois licensing law, including, but not limited to, Sections 1450.705 and 1450.530 of the Illinois Real Estate License Act of 2000.

43. Plaintiff informed Legendre of this issue and that she would not approve Parker's transfer or candidacy.

44. Legendre ignored Plaintiff's concerns and approved the candidate for hire after the candidate revised her application, leading Plaintiff to question new application's authenticity.

45. Plaintiff reported her concerns to Defendant's Head of Brokerage and Compliance and to Legendre.

46. Parker's application was submitted to defendant's compliance department and not approved; however, in January of 2020, Legendre insisted that Parker's license be sponsored contrary to Illinois law and Defendant's internal compliance.

47. After Defendant ignored her concerns, Plaintiff contacted the applicable Illinois regulatory agency to advise her and to confirm the potential violation(s) of state regulatory law.

48. Defendant directed Plaintiff to stop contacting the regulatory agencies and threatened her with adverse action in the event that she continued to contact the applicable agencies.

49. Despite Plaintiff's valid concerns regarding compliance with licensing law and the candidate's lack of experience, Director Legendre hired Parker as an Illinois Broker.

50. Upon information and belief, Parker sold Illinois properties for RHSS after Plaintiff was terminated.

51. After Plaintiff raised compliance and licensing concerns, Defendant, through Rabin, Legendre, and others, retaliated against Plaintiff and created an untenable and hostile work environment for Plaintiff.

52. Defendant systematically and substantially increased Plaintiff's workload but failed to increase her compensation.

53. Plaintiff was forced to work excessive hours without commensurate compensation as compared to similarly situated Brokers.

54. For example, in January 2020, Legendre and Rabin singled out Plaintiff and, contrary to established Company practice, assigned Plaintiff additional and less profitable properties in states where Plaintiff was not the managing broker.

55. Around the same time, Legendre inexplicably assigned more profitable properties in Illinois away from Plaintiff and gave them to Rabin, despite Plaintiff's position as the Illinois Qualifying Broker.

56. Following a former broker's resignation, Plaintiff was, pursuant to Illinois licensing law, required to supervise fifteen employees who conducted transactions through the "owners.com" subsidiary.

57. Defendant intentionally increased Plaintiff's workload and failed to provide her with additional compensation.

58. Plaintiff requested compensation for the additional work but never received it.

59. Additionally, Defendant, through Rabin and others, began a pattern of negative behavior and singled out Plaintiff and attempted to humiliate her.

60. For example, Defendant targeted Plaintiff and inappropriately blamed her for Defendant's shortcomings in communications with third parties.

61. Plaintiff expressed her disappointment with this treatment and with her unexpected and excessive workload to the Director of Broker Operations, Angela Flores ("Flores").

5

Case: 1:22-cv-00389 Document #: 1 Filed: 01/24/22 Page 6 of 14 PageID #:6

62. In January 2020, the Defendant subjected Plaintiff to negative actions as a direct result of Plaintiff raising compliance concerns.

63. For example, Legendre reprimanded Plaintiff for adhering to state inspection requirements that potentially delayed transactions.

64. On or around December 2019, Defendant started accepting applications for the position of "Broker II," a position which would result in an increase in base salary of $15,000 annually.

65. The requirements for promotion to Broker II included specific requirements, all of which Plaintiff met or exceeded.

66. Plaintiff applied for the Broker II position.

67. On or around January 27, 2020, Legendre failed to promote Plaintiff the Broker II position, and instead promoted less qualified males, including Val Laborevitch ("Laborevitch"), a younger, non-Jewish broker, who was previously Plaintiff's subordinate and who did meet the requirements of the position.

68. When Plaintiff asked Legendre about the promotion denial, Legendre provided Plaintiff reasons that were irrelevant to the Broker II position's stated requirements.

69. After she was denied the promotion, Plaintiff asked for explanations from several employees and was further led to believe she was being targeted and discriminated against..

70. When Plaintiff indicated that she believed she was the subject of discrimination, she was advised Plaintiff to contact Defendant's Human Resources Department.

71. Plaintiff informed Defendant's Human Resources Department that she felt she did not receive the Broker II position because of the Legendre's personal animus towards Plaintiff as an older Jewish woman and in retaliation against Plaintiff for raising compliance issues both internally and with outside agencies.

72. In response, Bradford Wilkins ("Wilkins"), Director of Defendant's Human Resources Department stated that the decision was based on the opinion of Legendre and suggested that if the Plaintiff was disappointed, she should look for broker jobs elsewhere.

73. Upon information and belief, all other brokers denied promotions were denied based upon objective criteria such as the number of licenses they possessed.

74. Despite these adverse actions taken against her, Plaintiff was among Defendant's top

performing brokers until the last month of her employment.

75. Legendre ignored Plaintiff's requests to meet to discuss her workload and promotion.

76. On April 5, 2020, Defendant asked to take the following day off to care for her sick son, who, it was eventually discovered, had been infected with Covid-19.

77. On April 6, 2020, Defendant terminated Plaintiff's employment.

78. Defendant stated that Plaintiff was laid off as part of a reduction in force due to the Covid-19 pandemic.

79. Defendant was one of four Brokers laid off.

80. Despite considerable and determinative contradictory evidence, Defendant claimed that Plaintiff was laid off because of performance issues and to eliminate redundancy amongst employees who help brokerage licenses in the same states.

81. Contrary to Defendant's claim that Plaintiff was a "substandard performer who frequently failed to complete tasks, follow Company procedures, and timely respond to internal and external requests," Plaintiff never had a negative performance review.

82. In fact, after laying off Plaintiff, Defendant discovered that it could not operate in the state of Kentucky without Plaintiff's expertise and qualifications.

83. Following the layoff notice, Defendant realized that operation needs required the Defendant to maintain Plaintiff's employment for an additional six weeks.

84. However, the Company did not reinstate Plaintiff's health insurance during the start of this six-week period.

85. Defendant did not ask the other three laid off Brokers to work following the notice of layoff.

86. During this time, Defendant, in violation of Kentucky law, reactivated Plaintiff's license in Kentucky so that it could keep selling properties under her name while the transition took place.

87. Defendant had no legitimate business reason to discharge Plaintiff when it clearly needed her experience and licensure to do business.

88. On May 15, 2020, Defendant permanently terminated Plaintiff's employment.

89. Upon information and belief, Defendant replaced Plaintiff with younger male brokers with less experience, fewer licenses than Plaintiff, and who did not have listings in various states.

90. On or about October 22, 2020, Plaintiff filed a charge with the EEOC, alleging Defendant discriminated against her based on her age, religion (Judaism) and gender (female) and retaliated against her for reporting unlawful activity.

91. On October 25, 2021, the EEOC issued its Notice of Right to Sue.

## COUNT I

### Discrimination Based on Religion and Sex

92. Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

93. Pursuant to 42 U.S.C. § 2000e-2, it is unlawful for an Employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin.

94. Among other actions, Defendant discriminated against Plaintiff when it promoted less qualified, non-Jewish, male employees to Broker II instead of Plaintiff.

95. Prior to Legendre's hiring, Plaintiff was appointed to Qualifying Broker in Illinois over Laborevitch; however, Legendre promoted the latter to the Broker II position.

96. Defendant discriminated against Plaintiff when it terminated her employment instead of numerous less-qualified, less-accomplished, less-essential, and non-Jewish male employees.

97. Furthermore, despite Plaintiff contacting Defendant's HR, Defendant violated Plaintiff's Title VII rights by failing to take any preventative and/or corrective measures with respect to the discriminatory behavior.

98. By depriving Plaintiff of these employment opportunities because of her race and sex, Defendant violated 42 U.S.C. § 2000e-2.

99. Defendant's discriminatory actions have caused Plaintiff to suffer a loss of earnings and benefits, thwart her career advancement, and caused pain, humiliation, and considerable mental anguish.

100.    The discrimination against Plaintiff violated Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2.

101.    As a direct and proximate result of all of Defendant's actions, Plaintiff suffered damages including emotional distress, inconvenience, loss of employment, income and benefits and other indignities.

102.    This discrimination caused Plaintiff to suffer actual and compensatory damages.

103.    Because Defendant and its agents acted purposefully, with malice, and with reckless disregard for Plaintiff's protected rights, the discrimination was intentional and in willful disregard for Plaintiff's civil rights, punitive damages are warranted.

WHEREFORE, the Plaintiff, Elena Levin, hereby requests that judgment be entered in her favor and against the Defendant, and to award her the following relief:

(a) Declare that the acts and practices complained of herein are in violation of 42 U.S.C. 2000e-2;

(b) Award Plaintiff lost wages and benefits;

(c) Award Plaintiff compensatory damages for her mental anguish and humiliation;

(d) Award Plaintiff punitive damages;

(e) Award Plaintiff her costs incurred in connection with this action, including reasonable attorney's fees;

(f) Grant Plaintiff such other and further relief as this Court deems just and proper.

## Count II

### Discrimination Based on Age

104.    Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

105.    Pursuant to the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to discriminate against an employee based on the employee's age. 29 U.S.C.A. § 623.

106.    Among other actions, Defendant discriminated against Plaintiff when it terminated her employment instead of numerous less-qualified, younger employees and subsequently replaced her with younger employees.

107.    As a direct and proximate result of Defendant's willful actions, Plaintiff suffered damages including emotional distress, inconvenience, loss of employment, income and

benefits, and other indignities.

WHEREFORE, the Plaintiff, Elena Levin, hereby requests that judgment be entered in her favor and against the Defendant, and to award her the following relief:

108.    (a) Declare that the acts and practices complained of herein are in violation of 29 U.S.C.A. § 623;

109.    (b) Award Plaintiff lost wages and benefits;

110.    (c) Award Plaintiff compensatory damages for her mental anguish and humiliation;

111.    (d) Award Plaintiff punitive damages;

112.    (e) Award Plaintiff her costs incurred in connection with this action, including reasonable attorney's fees;

113.    (f) Grant Plaintiff such other and further relief as this Court deems just and proper.


## COUNT III

### Illinois Human Rights Act -
### Discrimination Based on Religion, Age, and Sex

114.    All previous paragraphs *supra* are hereby incorporated by reference as if fully restated herein.

115.    Pursuant to the Illinois Human Rights Act, it is a civil rights violation for an employer to any employer to refuse to hire, to segregate, to engage in harassment…, or to make an employment decision based on unlawful discrimination. 775 Ill. Comp. Stat. Ann. 5/2-102.

116.    Defendant and its agents harassed Plaintiff and treated her less favorably than other similarly situated employees of different gender, age groups, and religion.

117.    Plaintiff has met all the legitimate business expectations of her position.

118.    Defendant promoted less-qualified employees to positions to which Plaintiff applied.

119.    As a result of this disparate treatment, Plaintiff lost pay, benefits, promotional opportunities, and ultimately, loss of employment.

120.    Further, Plaintiff suffered high levels of stress and anxiety as a result of Defendant's willful and deliberate disparate treatment.

121.    Finally, Plaintiff was harmed when Defendant terminated her employment and

health insurance.

122.     Defendant discriminated against Plaintiff because of her sex, religion and age in violation of the Illinois Human Rights Act, 775 ILCS 5/1-102.

WHEREFORE, the Plaintiff, Elena Levin, hereby requests that judgment be entered in her favor and against the Defendant, and to award her the following relief:

(a) Describing that the acts and practices described herein are a violation of the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq*;

(b) Enjoining and permanently restraining these violations;

(c) Making Plaintiff whole by awarding her back pay and any lost benefits since her termination;

(d) Award Plaintiff damages in the amount of any pay differential for any promotions she would have received but for Defendant's discriminatory, harassing, and retaliatory conduct;

(e) Award Plaintiff compensatory damages; for her mental anguish and humiliation;

(f) Award Plaintiff punitive damages as determined by the jury and to the full extent allowed by law;

(g) Awarding Plaintiff reasonable attorneys' fees and costs incurred by Plaintiff in bringing her Complaint; and

(h) Awarding Plaintiff such other relief as the Court deems just and proper.

## <u>COUNT IV</u>
### Retaliation for Whistleblowing

123.     Pursuant to 740 Ill. Comp. Stat. Ann. 174/1 et seq., the Whistleblower Act, it is unlawful for an employer to retaliate against an employee for disclosing information to a government or law enforcement agency that he or she had reasonable cause to believe disclosed a violation of a state or federal law, rule, or regulation.

124.     Pursuant to Whistleblower Act § 174/20.1, any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or

attempting to disclose public corruption or wrongdoing. 740 Ill. Comp. Stat. Ann. 174/20.1.

125.     Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

126.     By the conduct described above, Defendant retaliated against Plaintiff by threatening her and subjecting her to adverse employment actions after she engaged in protected activity by reporting compliance issues, including, but not limited to, a potential fraudulent scheme at hubzu.com, a potentially fraudulent Broker application, and compliance issues related to certain Illinois transactions.

## COUNT V
### (Harassment and Retaliation)

127.     Allegations stated *supra* are hereby re-alleged as if fully set forth herein.

128.     Defendants are in violation of Title VII, ADEA, IHRA, and the Illinois' Whistleblower Protection Act.

129.     Pursuant to the Act, an employee who alleges employment discrimination or who assists in the investigation of alleged employment discrimination is protected from retaliatory action by their employers.

130.     Defendant has engaged in unlawful and escalating patterns of retaliatory practices by taking adverse actions against Plaintiff after she reported compliance issues to the Defendant and subsequently alleged discriminatory practice.

131.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities in retaliation for exercising her protected rights.

132.     The unlawful employment practices described above were intentional.

133.     The unlawful employment practices described above were done with malice or with reckless indifference to Plaintiff's protected rights.

134.     Further, Defendant's failure to address and correct its agents' intentional and harassing behavior has caused Plaintiff to be subjected to escalating patterns of harassment and disparate treatment resulting in a hostile work environment.

135.     By retaliating against Plaintiff because she engaged in protected activity, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3.

136.     This retaliation caused Plaintiff to suffer actual and compensatory damages.

137.    Because the retaliation was intentional and in willful disregard for Plaintiff's civil rights, punitive damages are warranted.

WHEREFORE, the Plaintiff, Elena Levin, hereby requests that judgment be entered in her favor and against the Defendant, and to award her the following relief:

(a) Award Plaintiff lost wages and benefits;

(b) Award Plaintiff compensatory damages for her mental anguish and humiliation;

(c) Award Plaintiff punitive damages;

(d) Award Plaintiff her costs incurred in connection with this action, including reasonable attorney's fees;

(e) Grant Plaintiff such other and further relief as this Court deems just and proper.

## COUNT VI
## Retaliatory Discharge

138.    Plaintiff restates and re-alleges paragraphs *supra* of the Complaint as if fully set forth herein.

139.    Illinois recognizes a private tort action for retaliatory discharge. *Michael v. Precision All. Grp*., 2014 IL 117376.

140.    To sustain a cause of action for retaliatory discharge, an employee must prove: (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy. Id at ¶31.

141.    Plaintiff was discharged on May 15, 2020.

142.    Plaintiff's discharge was in retaliation to protected activity and reporting unlawful actions, including those in violation of the Illinois Real Estate License Act.

143.    The intent of the [Illinois] General Assembly in enacting this [Real Estate License Act] is to evaluate the competency of persons engaged in the real estate profession and to regulate their activities for the protection of the public." 225 Ill. Comp. Stat. Ann. 454/1-5.

144.    As such, Defendant's discharge of Plaintiff clearly violates public policy.

145.    Defendant discharged Plaintiff because she was, in part, attempting to comport with state laws governing Defendant's business practices.

13

146.    In addition to back pay, front pay and compensatory damages, courts can award punitive damages in retaliatory discharge cases. *See Blount v. Stroud*, 95 Ill.App.3d 8 (1st Dist 2009).

147.    This retaliation caused Plaintiff to suffer actual and compensatory damages.

148.    Because the retaliation was intentional and in willful disregard for Plaintiff's civil rights, punitive damages are warranted.

WHEREFORE, the Plaintiff, Elena Levin, hereby requests that judgment be entered in her favor and against the Defendant, and to award her the following relief:

(a) Award Plaintiff lost wages and benefits;

(b) Award Plaintiff compensatory damages for her mental anguish and humiliation;

(c) Award Plaintiff punitive damages;

(d) Award Plaintiff her costs incurred in connection with this action, including reasonable attorney's fees;

(e) Grant Plaintiff such other and further relief as this Court deems just and proper.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests a trial by jury on all issues hereinabove.

Respectfully Submitted,

By:   /s/ Matt Carpenter
Attorneys for Plaintiff

Matt Carpenter (#6289182)
CTM LEGAL GROUP, LLC
77 W. Washington St., Ste 2120
Chicago, IL 60602
Ph. 312.818.6700
Fx. 312.492.4804
mcarpenter@ctmlegalgroup.com