UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Elena Levin,

    *Plaintiff,*

v.

Altisource Solutions, Inc.,

    *Defendant.*

No. 22 CV 389

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Elena Levin ("Levin") brings this suit against her former employer Altisource Solutions, Inc. ("Altisource") for discrimination based on her religion and sex, and for retaliation under Title VII of the Civil Rights Act, the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.* ("IHRA"), the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* ("IWA"), and Illinois and New Jersey common law. [Dkt. 26.][1] Before the Court is Altisource's motion for summary judgment. [Dkt. 80.] For the reasons stated below, the Court grants the motion in part and denies it in part.

## I.    Local Rule 56.1

The Court first discusses Local Rule 56.1, which bears on the facts properly before the Court. Along with their summary judgment briefs, Levin and Altisource filed statements of material facts as required by Local Rule 56.1. [Dkts. 96, 103.] The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.,*

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

423 F.3d 627, 633 (7th Cir. 2005). Each statement of fact must be "concise." L.R. 56.1(d)(1). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

A party responding to an adversary's statement of facts may make objections based on admissibility, with the argument for the propriety of the objection in its brief. L.R. 56.1(e)(2) ("If a party contends that its opponent has included objectionable or immaterial evidence or argument in a LR 56.1 submission, the party's argument that the offending material should not be considered should be included in its response or reply brief."). If the Court overrules the objection and the party does not otherwise dispute the fact, however, the fact is deemed admitted. *Id.* "To be considered on summary judgment, evidence must be admissible at trial, though the form produced at summary judgment need not be admissible." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017). The Court may require strict compliance with Local Rule 56.1. *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 611 n.13 (7th Cir. 2023).

Altisource asks the Court to disregard Levin's responses to Altisource's statement of facts where they include additional factual material not responsive to the facts stated. [Dkt. 102 at 8–9.] Per Local Rule 56.1(e)(2), an L.R. 56.1(c)(2) response may not set forth any new facts, that is, facts that are "not fairly responsive to the asserted fact to which the response is made." If the non-movant wishes to assert

new facts, they can do so in a statement of additional facts, but not an L.R. 56.1(b)(3)(B) response or brief. L.R. 56.1(b)(3)(B). Where the non-movant violates this rule, the Court can disregard non-responsive facts improperly introduced. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008) (district court did not err in disregarding plaintiff's response to defendant's asserted fact where it "contained several extremely long, argumentative paragraphs, and in those paragraphs he simultaneously denied the veracity of [the defendant's] proposed material facts and presented additional facts of his own.").

Levin flouted this rule in her response to Statement 29, which states that her supervisor testified that he terminated Levin because her removal would cause limited disruption to the brokerage. [Dkt. 96, ¶ 29.] Levin's response admits this, but then goes on for over two pages introducing facts to contest the veracity of the supervisor's testimony. [*Id.*] The proper place for these facts is a statement of additional facts where the movant can respond in an orderly manner. And so, the Court disregards any new facts not also included in Levin's statement of additional facts.[2]

Altisource also argues that Levin improperly padded each paragraph in her statement of additional facts with multiple facts in violation of L.R. 56.1(d)(1) ("statement of material facts . . . must consist of *concise* numbered paragraphs.") (emphasis added). [Dkt. 102 at 9–10.] This also skirts the Court's direct order denying

---

[2]     Other responses highlighted by Altisource either do not contain new facts, contain facts also stated in Levin's additional statement of facts, or contain new facts that are not material. [Dkt. 96, ¶¶ 10–12, 37, 48, 51.]

Levin leave to file 80 numbered paragraphs and limiting her to 53. [Dkt. 90.] Still, "[t]here is no categorical prohibition of paragraphs containing multiple sentences or multiple facts." *Jackson v. City of Chi.*, No. 20 C 5886, 2024 WL 1142015, at *2 n.1 (Mar. 15, 2024), and the Court prefers to decide the case on the merits. Altisource had the opportunity to respond to Levin's statement of additional facts and did so. [Dkt. 103.] The Court will therefore consider all Levin's facts, albeit with some hesitation.

Finally, Altisource objects to nearly all of Levin's numbered paragraphs on various bases: that they lack relevance, foundation, or evidentiary support, constitute hearsay, or include inappropriate argument.[3] The Court highlights a global objection here and addresses specific objections where they are relevant.

One recurring objection is that Levin cannot rely on her own deposition or declaration to create genuine issues of fact. [*E.g.*, Dkt. 102 at 8; Dkt. 103, ¶¶ 33–34, 40, 46, 48–50, 52.] On the contrary, the Seventh Circuit has "taken pains to reject [this] misconception." *Whitaker v. Wisc. Dep't of Health Servs.*, 849 F.3d 681, 685–86 (7th Cir. 2017) (internal quotation omitted). A deposition, affidavit, or other written statement can be used to introduce facts—even though self-serving—so long as it's based on personal knowledge and is not conclusory. *Foster v. PNC Bank, Nat'l Assoc.*, 52 F.4th 315, 320 (7th Cir. 2022); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir.

---

[3]    Many of Altisource's objections do not specify which part of the fact statement they challenge or why their objections apply. [*E.g.*, Dkt. 103, ¶¶ 18–19, 22–25 (asserting lack of foundation and hearsay).] Where objections are unspecified and not supported by any argument in Altisource's response to Levin's statement of facts or brief, they are waived. L.R. 56.1(e)(2); *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) ("[S]keletal arguments may be properly treated as waived.").

2013) (reiterating that a party cannot "denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment" by calling it "self-serving."). Altisource's blanket objections are insufficient to refute facts supported by Levin's deposition and declaration. Rather, it needed to explain why the specific facts stated are conclusory, not within Levin's personal knowledge, or contradicted by other evidence. The Court thus credits Levin's deposition and declaration for summary judgment purposes, subject to these limitations.

## II.  Background

The following facts are taken from the parties' Local Rule 56.1 statements and attached exhibits. [Dkts. 80, 96, 97, 102, 103.] The Court presents the facts in the light most favorable to the non-moving party. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023). These facts are undisputed except where a dispute is noted.

Altisource provides services and technology for the mortgage and real estate industries, including online real estate platforms. [Dkt. 96, ¶ 1.] Real Home Services Solutions ("RHSS") is a subsidiary of Altisource. [*Id.* at ¶ 4.] Plaintiff Elena Levin is a Jewish woman who was a broker and qualifying broker at RHSS from May 2016 until Altisource terminated her in May 2020. [*Id.* at ¶¶ 3, 28, 34; Dkt. 26, ¶ 9.] In addition to being a normal broker, qualifying brokers oversee brokerage activities in a particular state and are responsible for ensuring compliance with state real estate laws and regulations. [Dkt. 103, ¶ 4.] Levin was RHSS's qualifying broker for Illinois, Wisconsin, and Idaho, and the qualifying broker for Kentucky and South Dakota for Altisource Online Auctions, another Altisource subsidiary. [*Id.* at ¶ 1.] The parties agree that Levin's performance met her supervisor's expectations. [*Id.* at ¶ 8.]

5

At RHSS, all brokers report to senior brokers, who in turn report to a senior manager. [*Id.* at ¶ 5.] Senior brokers during the relevant period included Neven Sprajla, J.R. Samsing, Cheryl Rabin, and David Torres. [*Id.*] The parties dispute whether Levin reported to Sprajla or Rabin from April 2018 to January 2020. [*Id.* at ¶ 6.] Levin reported to Torres in his capacity as a qualifying broker, but Torres did not have any authority to discipline or terminate her or make any such recommendation. [*Id.* at ¶ 7; Dkt. 80-4 ("Legendre Dep.") at 45:22–24 – 46:1–13.] In November 2019, Mason Legendre became the senior manager overseeing Levin and other brokers. [Dkt 103, ¶ 7.] During the period that Levin reported to Legendre, she resided in Illinois and Legendre in Georgia, and the two only communicated over the phone or by email. [Dkt. 96, ¶¶ 3, 8–9.]

This lawsuit arises from Altisource's failure to promote, and then termination of Levin, which was allegedly motivated by religious and sex discrimination, and because Levin complained about and refused to participate in violations of industry licensing laws and fraud at RHSS.[4] In September 2019, Levin refused to sponsor a brokerage license application because she did not believe the applicant was qualified. [Dkt. 96, ¶ 13.] Levin also complained about what she perceived as a problem with fraudulent buyers in New Jersey manipulating property prices. [*Id.* at ¶ 16; Dkt. 103, ¶¶ 19–21.] In January 2020, Levin applied for and was denied a promotion to a

---

[4]     Levin requested leave to voluntarily dismiss her age discrimination claims in her response brief. [Dkt. 91 at 15.] The Court grants her request and dismisses her age discrimination claims in Counts II, III, and V.

"Broker II" position. [Dkt. 96, ¶¶ 17–18.] In May 2020, Altisource terminated her as part of a reduction in force. [*Id.* at ¶¶ 27–28, 34.]

## A. Brokerage License Sponsorship

In September 2019, Levin was asked to sponsor an Illinois Real Estate Managing Broker License for Sylvia Parker because Altisource sought to replace a managing broker in Illinois. [Dkt. 103, ¶ 9.] Parker was already employed by another Altisource affiliate, owners.com. [*Id.*] Levin refused because Illinois law required an applicant to have been practicing as a managing broker for two years immediately before applying, and Levin knew Parker lacked this experience—she'd said so on her application and to Levin directly. [*Id.* at ¶ 10.] Levin informed Parker and Altisource Director of Compliance Angela Flores that Parker was unqualified. [*Id.*]

In January 2020, Parker again requested Levin sponsor her application. Levin brought the issue to Legendre, who agreed to look into it. [*Id.* at ¶ 13.] A few days later, Parker emailed Levin at Legendre's request to sponsor her application. Legendre responded, "[Levin], seems harmless to sign. Thoughts?" [*Id.*] Levin informed Legendre that Parker's original application said she did not have the requisite experience and yet her resubmitted application represented that she in fact did have two years of experience. [*Id.*] Levin also told him she directed Parker to submit her education and license history to the Illinois Realtors Association, an external entity. [*Id.*] Legendre followed up with Levin multiple times about the progress of Parker's application. [*Id.* at ¶ 14.]

On January 14, 2020, Legendre held a conference call with Parker, Levin, Rabin, and Torres. [*Id.*] During the call, Rabin purportedly threatened Levin with a

write-up for contacting an outside agency about the matter. Altisource disputes this fact. [*Id.*] But it is undisputed that after the call, Legendre emailed Levin stating that "these types of communications [to an outside agency] may open the brokerage up to additional scrutiny" and that the email was a "formal notification that moving forward you [Levin] will not deviate from the company's established process." [*Id.* at ¶ 15.] Levin added Flores from the Legal Compliance Department to the email chain for compliance review. [*Id.* at ¶ 16.] Legendre emailed Levin again on January 15 stating that Flores had no issues with the license request. But to the contrary, Flores had responded with questions about the discrepancy between Parker's two applications. [*Id.* at ¶ 16.] The parties dispute whether Levin refused to sign Parker's application at all, or whether she agreed to sponsor her as a broker until she gained the experience to become a managing broker. [*Id.* at ¶ 17.]

Levin reported the issue with Parker's application to Altisource's Legal Compliance Department, and legal compliance and other personnel at owners.com. [Dkt. 96, ¶¶ 45–47.]

### B. Fraud Complaint

As the Parker issue was emerging, Levin and another broker, James Rembish, noticed a pattern of fraudulent bidding on properties listed for sale by clients of Altisource in New Jersey. [Dkt. 103, ¶ 19.] Levin and Rembish stated in their depositions that Levin continuously emailed Legendre, Flores, Torres, Rabin, and

others about the fraud through March 2020. [Dkt. 103, ¶¶ 20–21.] Levin also refused to sign off on fraudulent price adjustments. [*Id*. at ¶ 21.][5]

In July 2020, broker Steve Metarelis also noticed bidding irregularities on New York properties and became concerned about criminal fraud at Altisource. [*Id*. at ¶ 28.] In addition to being a broker, Metarelis was a licensed Fraud Examiner. [*Id*.] Metarelis reported his concerns and supplied evidence of fraud to Torres, Flores, and a deputy general counsel at Altisource. [*Id*. at ¶¶ 29–30.] Altisource eventually fired and sued individuals involved in the fraud, including Torres. [*Id*. at ¶ 32.]

## C. Levin's Failure to be Promoted

In January 2020, Levin applied to be promoted to a Broker II position. [Dkt. 96, ¶ 17.] Legendre granted promotions to Broker II based on his personal observations of applicants during meetings and consultations with senior brokers. [Dkt. 103, ¶ 36.] According to Altisource, a successful candidate needed: (1) five years of experience as a broker in a real estate office or five years of qualified broker experience with RHSS with no compliance failures; (2) documented leadership and mentoring of other brokers, including regularly supporting RHSS key objectives for compliance, following company policies and procedures, liquidation, customer care, timely completion of tasks and requests from senior leadership, and covering brokers when on PTO; and (3) at least five broker licenses and ability to take on a qualified broker role immediately, if needed. [Legendre Dep. at 155–57, 161.] Levin disputes

---

[5]     Whether Levin refused to participate in and reported fraud is one instance in which Altisource wrongly objects that Levin's deposition and declaration should not be credited as evidentiary support. Levin and Rembish's depositions are both sufficient to create a genuine dispute of fact because they are based on personal knowledge. *See supra*, Part I.

the first criterion and insists that the position required five years of *managing* broker experience. [Dkt. 96, ¶ 22.]

When Levin was not promoted, she emailed Legendre for an explanation. [Dkt. 96, ¶ 18.] Legendre explained that she did not exhibit the level of leadership required for the position (criterion 2) and identified multiple areas of growth that would put her in a better position to be promoted to Broker II. For example, he encouraged her to be more vocal in meetings, more proactive in resolving tasks, make recommendations to improve the department, and increase communication to help limit deficiencies. [*Id.* at ¶¶ 19–20.] He also told Levin that her performance would be reevaluated in March 2020 (about two months later) to determine if she should be promoted. [*Id.* at ¶ 21.] The parties agree that Levin met the other criteria but dispute whether she demonstrated enough leadership to be promoted.

Levin did not file a formal complaint or complain in writing to Human Resources or Legendre that she was not selected because of her religion or sex. [Dt. 96, ¶¶ 23–24.] But Levin asserts that she verbally complained to Bradford Wilkinson, Director of Human Resources, and that Legendre was aware of this complaint. [*Id.* at ¶¶ 23, 49.] Regardless of whether Levin complained to HR, the undisputed evidence cited shows that Legendre would not have been aware that Levin complained. In support of Levin's position, she cites testimony from Alison Parra, a Human Resources Business Partner for Altisource. [*Id.* at ¶ 49.] But Parra stated that if an Altisource employee complained to HR about discrimination or retaliation committed by their supervisor, HR would not inform the supervisor of the complaint unless there

10

were disciplinary action against the supervisor, and even then, the employee's identity would be kept anonymous. [*Id.* at ¶ 49; Dkt. 93-13 ("Parra Dep.") 48:10–51:14.] Levin does not cite any other evidence contradicting this testimony.

### D.    Levin's Termination from Altisource

The Covid-19 global pandemic dramatically affected Altisource and, like so many businesses, led to hundreds of layoffs. [Dkt. 96, ¶¶ 26–27.] In March 2020, Legendre emailed his supervisor, Kandy White, identifying brokers the company could eliminate with little impact based on the licenses they held and state requirements. Levin was on the list along with three other brokers. [Dkt. 103, ¶ 38.] Altisource argues that Levin was included because she had licenses in states that were considered redundant and few listings that would be impacted by her exit. [Dkt. 96, ¶ 30.]

Altisource notified Levin of her termination on April 6, 2020 but briefly extended her employment to May 15, 2020. [*Id.* at ¶¶ 28, 34.] This litigation followed. Levin alleges Altisource violated Title VII, IHRA, IWA, and Illinois and New Jersey common law in failing to promote and then terminating her. Altisource moved for summary judgment on all claims.

## III.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022) (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021)).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's]

position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

## IV. Analysis

### A. Discrimination (Title VII and IHRA)

In Counts I and III, Levin brings claims for religious and sex discrimination in violation of Title VII and IHRA. Illinois courts "have adopted the analytic framework" of Title VII to analyze IHRA claims. *Zaderaka v. Ill. Hum. Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. Sup. Ct. 1989); *see also Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016). Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates Title VII if it "intentionally relies in part" on an individual employee's membership in a protected class when the employee makes an adverse employment decision. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659 (2020). Put differently, "if changing the employee's" sex or other protected characteristic "would have yielded a different choice by the employer," then "a statutory violation has occurred." *Id* at 659–60.

Here, the parties agree that Levin is a member of a protected class based on her religion (Jewish) and sex (female), and that she suffered two adverse employment

actions—failure to be promoted and termination.[6] They only dispute causation. At summary judgment, the question is "'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] caused the discharge or other adverse employment action.'" *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Nigro v. Ind. Univ. Health Care Assocs., Inc.*, 40 F.4th 488, 491 (7th Cir. 2022); *Purtue v. Wisc. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020).

A plaintiff may either "prove discrimination in a holistic fashion" under *Ortiz*, or rely on the *McDonnell Douglas* burden-shifting framework, "which gives the plaintiff the initial burden to establish a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual." *Wince*, 66 F.4th at 1040 (cleaned up); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Levin's arguments sound in both *McDonnell* and *Ortiz*, so the Court considers both.

---

[6]     Levin's response to Altisource's statement of facts also claims that Altisource committed an adverse employment action by subjecting her to harassment, including by assigning her unfavorable inventory and overloading her with manual listings. [Dkt. 96, ¶ 37.] Altisource argues that these acts do not amount to an adverse employment action for a discrimination or retaliation claim because, even if true, they did not significantly change her employment status and because there is no evidence that they were motivated by discrimination. [Dkt. 80 at 7–8, n.3 (citing *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007); *see also Hambrick v. Kijakazi*, 79 F.4th 835, 841 (7th Cir. 2023) (heavy workload and dissatisfaction with supervisors did not create a hostile work environment)).] Levin did not address this argument in her response brief, so any claim of discrimination or retaliation based on harassment or a hostile work environment (Count V) is forfeited.

### 1. Discrimination Based on Failure to Promote

To establish a *prima facie* case of discrimination based on a failure to promote, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the promotion; (3) applied for and was denied the promotion; and (4) the promotion was given to a member outside of the protected class who was not better qualified. *Carter v. City of Chi.*, 778 F.3d 651, 660 (7th Cir. 2015). Levin applied for and was denied the Broker II promotion. The parties agree that her supervisor, Legendre, decided who would be promoted based on his own observations and consultations with Senior Brokers, including Rabin and Torres. [Dkt. 103, ¶ 36.] Levin asserts two theories of liability: that Legendre's reasons for not promoting her were pretextual, and that Torres and Rabin influenced Legendre to not promote her due to discriminatory bias. [Dkt. 91 at 4, 13–15.] The question then is whether there is sufficient evidence for a jury to find that Legendre failed to promote or was influenced by Torres or Rabin to fail to promote Levin because of her religion or sex.

The parties dispute the second and fourth elements. As to the second, Altisource argues that Levin did not qualify for Broker II because she lacked necessary leadership characteristics. [Dkt. 80-2 at 3, 6.] According to Legendre, those included documented leadership and mentoring other brokers, supporting RHSS compliance objectives, following company policies and procedures, liquidation, customer care, timely completion of tasks and requests, and covering brokers when on leave. [Dkt. 103, ¶ 35; Legendre Dep. at 155:3–22, 157:6–13.] Levin claims she did all of these things, relying primarily on her own deposition and testimony of one

colleague (Metarelis) stating that she spoke up in meetings. [Dkt. 96, ¶ 19.] Legendre simply ignored her qualifications. [Dkt. 91 at 14.] However, an employee's "own opinions about [her] . . . qualifications [do not] give rise to a material factual dispute" unless "there can be *no dispute* among reasonable persons" that the employee was qualified. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020) (internal quotation omitted). Stray testimony of one colleague about a single characteristic is hardly sufficient. Even if Legendre were wrong about Levin's qualities, mistake is not enough to sustain a discrimination claim. *Liu v. Cook County*, 817 F.3d 307, 316 (7th Cir. 2016) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered for the adverse action.") (cleaned up). Consequently, Levin has not shown she was qualified for the promotion and has not made out a *prima facie* case of discrimination.

If Levin had established a *prima facie* case, the Court would next assess whether Altisource's nondiscriminatory reason for not promoting Levin is pretextual. This overlaps with the *Ortiz* framework, which asks whether there is direct or circumstantial evidence of discrimination. Direct evidence is "what [the employer] said or did in the specific employment decision in question." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Circumstantial evidence is "evidence which allows the trier of fact to infer intentional discrimination by the decisionmaker." *Id.* at 720. The Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination:

ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). Under *Ortiz*, the Court looks at all of this evidence together and asks simply "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. 834 F.3d at 765; *see also Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755 at 760 (7th Cir. 2022) (the court assesses the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself).

Levin points to two pieces of circumstantial evidence. First, she argues that Altisource promoted similarly situated people outside of her protected classes. [Dkt. 91 at 14.] To be similarly situated, employees must be "directly comparable in all material respects" but "need not be identical in every conceivable way." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) (internal quotations omitted). "In the usual case a plaintiff must show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012)).

Levin identifies two brokers—Val Laborevitch and Steve Metarelis—who were promoted despite being purportedly less than or as qualified as her. [Dkt. 91 at 4.]

17

Both are male and Metarelis is non-Jewish. [Dkt. 96, ¶ 22; Dkt. 103, ¶ 37.] Levin did not address whether Laborevitch is Jewish, so he is not a comparator for religious discrimination. Both brokers were promoted by Legendre according to the same promotion criteria.

Apart from these similarities, Levin has not shown that they were as or less qualified than her. Her primary contention is that they did not have five years of experience as a managing broker required for promotion. [Dkt. 91 at 14; Dkt. 96, ¶ 22.] Altisource insists that management experience was not a criterion. [Dkt. 103, ¶ 37.] The evidence supports this. Legendre stated that five years of experience as a broker or qualifying broker was required, not five years as a managing broker, and Metarelis did not recall management experience being required. [Dkt. 103, ¶ 37; Metarelis Dep., 37:1–5.] After the promotion decision, senior broker Sprajla sent Levin a list of criteria, which she relayed to Legendre in bullet form and listed her qualifications alongside them to argue that she should have been promoted. [Dkt. 103, ¶ 37; Dkt. 102-1 at 13–15.] The first criterion listed is "5 years broker experience," not managing broker experience. [*Id.* at 14.] Management experience is not listed anywhere else as a requirement. So, a jury could not reasonably find based on Levin's testimony that management experience was required.

Levin did not address any other aspect of Laborevitch or Metarelis's experience to show that they are valid comparators. Critically, Levin did not address their leadership skills, which Legendre determined Levin lacked. Consequently, the promotion of Laborevitch and Metarelis does not provide circumstantial evidence of

18

discrimination. *See Coleman*, 667 F.3d at 858–59 (comparator evidence faces a more rigorous standard when used to show pretext) (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852–53 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. Cty. of Rochester*, 643 F.3d 1031 (8th Cir. 2011)). Put differently, Levin has not come forward with evidence that the reason for not selecting her was pretextual. *Chatman v. Bd. of Educ.*, 5 F.4th 738, 747 (7th Cir. 2021) ("[P]retext means a lie, specifically a phony reason for some action." (cleaned up)).

Levin's last salvo are allegedly discriminatory comments made by Rabin and Torres before the promotion decision. Here, Levin asserts a cat's-paw theory of liability under which a plaintiff attempts to prove that an employee without the authority to fire the plaintiff or impose another adverse employment action "uses a formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Bragg v. Munster Med. Rsch. Found., Inc.*, 58 F.4th 265, 273 (7th Cir. 2023) (internal quotation omitted); [Dkt. 91 at 13.]. Legendre made the ultimate decision to not promote Levin, but consulted Rabin, Torres, and other senior brokers.

This theory fails for two reasons. First, "[a]n employer may avoid cat's-paw liability if 'the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision.'" *Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021) (quoting *McDaniel*, 940 F.3d at 370). "So long as 'the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . the employer will not be liable.'" *Id.* (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421

19

(2011)). It is undisputed that Legendre's promotion decisions were based on his own personal observations of brokers, not just input from senior brokers. [Dkt. 103, ¶ 36.] And independent of those consultations, Legendre observed and identified shortcomings in Levin's leadership skills.

Second, no jury could reasonably conclude that any discriminatory comments by Rabin or Torres about Levin were causally related to the decision not to promote her.[7] As to religious discrimination, Levin notes that in May 2019, Torres asked Levin, "So are you Russian, or are you Russian Jewish?" [Dkt. 103, ¶ 52.] Isolated comments may be proof of discrimination if they are causally related to the adverse action and are made around the same time as the adverse action. *See Castetter v. Dolgencorp LLC*, 953 F.3d 994, 997 (7th Cir. 2020). Even giving Levin the benefit of all reasonable inferences, Torres asking Levin whether she was Jewish does not come close to showing religious animus without more. Torres was not the decisionmaker for the position Levin sought—Legendre was—and Torres made the remark almost a year before Levin applied for the promotion. Nor has Levin presented any other evidence of discriminatory animus in the intervening year. *See also Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) (racially discriminatory remarks by a finance director a year and a half before the adverse action "is far from being evidence that there was a discriminatory motive" for the firing when the finance director played no role in the termination.). As to Legendre, Levin has not even claimed that he knew she was Jewish. [Dkt. 102 at 12.]

---

[7] Altisource is incorrect that Rabin and Torres's comments are hearsay because they are not offered for the truth of the matter asserted but to show bias. [Dkt. 102 at 12.]

Levin musters similarly scant examples of sex discrimination. In May 2019, Torres called her "high maintenance" when she complained about fraud at RHSS. [Dkt. 103, ¶ 22.] Torres's comment is not indicative of gender animus on its own and was made in the context of Levin complaining about fraud, which Altisource later sued Torres for. [*Id.*] It, too, was a single comment made almost a year before Levin was denied the promotion—hardly evidence a jury could hang its hat on. Rabin called Levin "high maintenance" and a "prima donna" on unspecified dates and in unspecified contexts. [Dkt. 103, ¶ 23.] She may have disliked Levin, but personal animosity is not a Title VII violation. *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012). And as just discussed, there must be evidence to support the inference that the decisionmaker or someone with influence over the decision made the comment around the time of, or about, the adverse action. *Seymour-Reed*, 752 F. App'x at 335. Here, Levin has offered no evidence that Legendre was biased against women.

Assessing the evidence as a whole, even in a pile, the Court concludes that no reasonable factfinder could conclude that Levin was not promoted because of religious or sex discrimination. *Ortiz*, 834 F.3d at 765–766.

### 2. Discrimination Based on Termination

Levin also claims that discrimination motivated Altisource to terminate her as part of its reduction in force ("RIF"). Altisource counters that Levin, along with other brokers, was terminated because her loss would cause little disruption to the

21

brokerage based on her licenses and listings. [Dkt. 80 at 5–6.] The Court finds that Levin has not made a valid case for discrimination under *McDonnell Douglas* or *Ortiz*.

Again, Levin failed to established *prima facie* case because she has not identified comparable employees outside her protected classes that were retained. Levin points to five potential comparators—Michell Powell, Lori Brown, Sylvia Parker, George Bellino, and Christopher Rose. [Dkt. 91 at 9–10.][8] But, Levin does not argue that any of these brokers are non-Jewish, so they are not valid comparators for religious discrimination. Powell, Brown, and Parker are women, so they are not valid comparators for sex discrimination. That leaves Bellino and Rose, who worked in New Jersey and had licenses in New Jersey, and New Jersey and New York, respectively. [Dkt. 103, ¶ 41.]

Levin argues that Belino and Rose were less qualified than her because they were junior, in their 90-day probationary period during the RIF, and had fewer licenses, no properties listed in their names, and no access to MLS. [Dkt. 91 at 10.] But apart from documentation of the brokers' licenses, Levin relies almost exclusively on the testimony of James Rembish, an Altisource broker who was also terminated in the RIF. [Dkt. 103, ¶ 24.] Altisource objects to Rembish's testimony because he was not Bellino or George's supervisor or in HR and thus lacks personal knowledge about their qualifications and listings. [*Id.* at ¶ 41–42.] The Court agrees. A deposition can only create a genuine dispute at summary judgment if its content is based on the

---

[8]     The Court disregards other potential comparators identified only in Levin's response to Altisource's statement of facts because these are additional facts that should have been included in Levin's statement of additional facts. [Dkt. 96, ¶ 29]; *see also supra*, Part I.

deponent's personal knowledge. *Whitlock v. Brown*, 596 F.3d 406, 411–12 (7th Cir. 2010). Speculation will not do. *Foster*, 52 F.4th at 320 ("[A] nonmoving party at the summary judgment stage . . . must go beyond the pleadings and support [their] contentions with proper documentary evidence.") (internal quotation omitted).

Rembish stated that his belief that Bellino and Rose lacked listings was based on the fact that it took him months to get into the MLS platform when he was hired. [Rembish Dep. at 52:15—53:12.] It was not based on any personal knowledge about Bellino or Rose themselves and Rembish never even met Bellino. [*Id.* at 52:9–10.] It is plausible that Rembish knew they were recently hired, but there is no foundation to show that he knew anything else about their qualifications. And that Bellino and Rose had fewer licenses does not necessarily suit them for termination—as Legendre explained, he assessed whether brokers had redundant licenses, not a certain number of them. [Dkt. 102 at 15.] Thus, Levin has not presented evidence showing that Bellino and Rose were "sufficiently comparable to [Levin] to suggest that [Levin] was singled out for worse treatment" because of her sex. *Coleman*, 667 F.3d at 846–47 (quoting *Crawford v. Ind. Harbor Belt R.R. Co.,* 461 F.3d 844, 846 (7th Cir. 2006)). Her case is also undercut by the fact that women Levin asserts were less qualified than her were retained and that male brokers were also let go. [Dkt. 91 at 9–10; Dkt. 96, ¶¶ 39–40.] *See Bosley v. Rush Prudential Health Plans*, No. 99-3669, 2000 WL 622883, at *3 (7th Cir. 2000) (affirming summary judgment where similarly situated employees outside protected class were treated the same as plaintiff); *Smith v.*

*Allscripts Healthcare Sols., Inc.*, No. 20 CV 7261, 2022 WL 16696169, at *11 (N.D. Ill. Nov. 3, 2022) (similar).

The evidence viewed under *Ortiz* leads to the same conclusion. "The only question for a district court on summary judgment is 'whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge.'" *Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024) (citing *Igasaki v. Ill. Dept. of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021)). The question is not whether Levin performed her job well, or whether Altisource was correct in determining that her termination was warranted. And the "focus is not on the wisdom of the decision, but on its genuineness." *Galvan*, 117 F.4th at 938.

Altisource claims that it terminated brokers whose loss would cause limited disruption to the brokerage. Legendre assessed the brokers and determined that Levin could be let go because she held redundant licenses and few listings that would be affected. [Dkt 96, ¶ 30.] Levin points to a couple of inconsistencies in Altisource's explanation to demonstrate dishonesty, but they are slight and not supported by evidence that would permit a reasonable factfinder to conclude the discrimination based on sex or religion.

First, Levin illustrates various ways in which her termination was disruptive for RHSS. For example, Altisource required a qualifying broker for Kentucky to do business there, who was Levin. When it decided to terminate Levin, it extended her employment to May 2020 to remove her managing broker designation and install a

new qualifying broker. [Dkt. 96, ¶ 34; Legendre Dep. at 196:2–14.] Altisource claims that the delay was caused by Covid—many people in Kentucky were not working—while Levin claims the disruption would have occurred regardless because Altisource relied on her license. [Dkt. 96, ¶ 34; Legendre Dep. at 196:2–24.] She argues that delaying her exit is proof that her termination was disruptive because she was essential and thus that Altisource's nondiscriminatory explanation is pretextual. [Dkt. 91 at 11.] Levin also had more MLS listings than other brokers, meaning she could list properties in more locations. [Dkt. 103, ¶ 49.] But Altisource never claimed that those terminated in the RIF caused *no* disruption—it only selected people whose loss would be less disruptive relative to losing other employees. So, without valid comparators, Levin's evidence here cannot show that Altisource knowingly terminated her when someone else should have been terminated instead.

Levin cites the many licenses she had as evidence that she must have been valuable enough to retain. [Dkt. 91 at 9.] But holding many licenses doesn't necessarily make an employee less redundant—as Legendre explained, it depends on where the licenses are held and state-specific factors. [Dkt. 102 at 15.] It also depends on how she stacked up next to comparable employees—but Levin failed to identify any who were retained. Levin may consider her termination a huge loss to RHSS, but that is an assessment best made by Altisource, not Levin or this Court. *Galvan*, 117 F.4th at 939 ("[T]he court is not a super personnel department that second-guesses employers' business judgments . . . The focus is not on the wisdom of the decision, but on its genuineness.") (internal quotation omitted).

25

Levin also cites Torres, who allegedly told Levin that she was terminated for "complain[ing] too much." [Dkt. 103, ¶ 50.] As Altisource notes, this statement is inadmissible hearsay. [Dkt. 102 at 11.] Although Torres is an Altisource employee, Levin made no attempt to show that he spoke within the scope of his employment—Torres did not supervise Levin and there's no evidence that he was involved in RIF decisions. Fed. R. Evid. 801(d)(2); *see Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 992 (7th Cir. 2016) (to fall within the 801(d)(2) exclusion from hearsay, an employee's "duties must encompass some responsibility related to the decisionmaking process affecting the employment action.") (internal quotation omitted). No other hearsay exception applies. Even if admissible, Torres' statement wouldn't help Levin's case because termination for complaining is unrelated to religious or sex discrimination.

Finally, Levin argues that Altisource's explanation for terminating her changed. [Dkt. 91 at 11–12.] "A plaintiff may show a genuine dispute of fact on pretext by identifying such . . . inconsistencies, or contradictions in a stated reason that a reasonable trier of fact could find it unworthy of credence." *Liu v. Cook Cnty.*, 817 F.3d 307, 316 (7th Cir. 2016) (cleaned up). Altisource asserted in its EEOC position statement that Levin was terminated "because of her past performance and her removal would cause limited disruption to the brokerage business." [Dkt. 103, ¶ 51.] But when asked about performance as a reason for termination, Legendre only testified that he considered licenses and assets held. [*Id.* at ¶ 38.] Altisource tries to buttress its argument by introducing evidence of Levin's poor performance. [Dkt. 96,

¶¶ 10–12.] But it is also the case that Altisource admitted Levin met Legendre's expectations. [*Id.* at ¶ 8.] At summary judgment, such a contradiction in evidence must be viewed in favor of the non-moving party. The shifting explanation is, then, a small amount of evidence of discrimination—not enough to sustain an inference of religious or gender discrimination on its own, but something to add to the pile. *See Ortiz*, 834 F.3d at 766.

Taken together, the evidence Levin presents to support a finding of pretext is scant and does not "permit a reasonable factfinder to conclude" that Levin's sex or religion "caused the discharge" at issue. *Igasaki*, 988 F.3d at 957. Therefore, she has failed to raise a genuine dispute of material fact. Even considered holistically, *see Ortiz*, 834 F.3d at 766, no reasonable jury could find in her favor. Altisource is therefore entitled to summary judgment on Levin's discrimination claims.

### B.    Retaliation (Title VII, IHRA)

Levin brings retaliation claims under Title VII and IHRA (Count V), which are analyzed using the Title VII framework. *See Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 821 (N.D. Ill. 2013) (citing *Zaderaka*, 545 N.E.2d at 687). "An employee bringing a retaliation claim against an employer must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 997 (7th Cir. 2024) (internal citation omitted). Internal or informal complaints to an employer and EEO complaints can constitute protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006).

Regardless of the form of the complaint, it "must be *about* the [challenged] discrimination." *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022).

Levin cannot succeed on retaliation based on a failure to be promoted because she did not engage in a statutorily protected activity. Levin complained about Parker's application and fraud, but it is undisputed that she did not complain about *discrimination* before she applied for the promotion. *McHale*, 41 F.4th at 871–872.

Levin's retaliation claim based on termination also fails because no reasonable jury could find a causal connection between her discrimination complaint and termination. Levin asserts that she verbally complained to Bradford Wilkins in HR that Legendre denied her a promotion because of religious and sex discrimination. [Dkt. 91 at 14–15; Dkt. 96, ¶ 48.] But her claim fails because she has not established that Legendre was aware that she complained about *discrimination*.

Levin relies on the deposition testimony from Alison Parra, another HR employee. According to Levin, Parra admitted that Legendre would have been informed of Levin's complaint because it was about him. [Dkt. 91 at 14–15.] But read in context, Parra's testimony establishes the opposite. What she actually stated is that if an employee complains to HR about religious or sex discrimination committed by a manager, the manager would not be informed unless there was a disciplinary action at the end of the investigation and, even then, the complainant's identity would be kept anonymous. [Parra Dep. at 48:10–51:13.] To counteract this contradiction, Levin argues that Wilkins told her that he had been in contact with a "strategic partner" who was out for two weeks and Levin, knowing that Legendre was out in

that same period, argues that Wilkins must have discussed the complaint with Legendre. [Dkt. 91 at 15.] However, Levin stated in her deposition that she did not know who the strategic partner was, [Dkt. 93-1 ("Levin Dep.") at 254:9–18], and none of the evidence she cites to supports her claim that the strategic partner was out for two weeks while Legendre was out. *See Johnson*, 892 F.3d ("'[J]udges are not like pigs, hunting for truffles' buried in the record.") (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). Even if Wilkins spoke to Legendre, Parra's explanation of HR policy indicates that he would not have told Legendre that the complaint alleged discrimination. Simply put, there is no evidence that Legendre was aware of Levin's discrimination complaint, and thus no connection between her complaint and termination.

Levin also argues that the timing of her termination in relation to her complaint is probative because it was less than a month after. [Dkt. 91 at 15.] However, "suspicious timing alone is generally insufficient to establish a retaliatory motive." *Galvan*, 117 F.4th at 947 (internal quotation omitted). Therefore, Altisource is entitled to summary judgment on Levin's retaliation claims.

## C. Retaliation (IWA and Common Law)

Although the Court grants summary judgment on Levin's federal claims, it exercises its discretion to retain supplemental jurisdiction over Levin's remaining state law claims because substantial discovery has already been completed and the pendent state claims are straightforward. 28 U.S.C. § 1367(a); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012) (presumption that federal court will relinquish remaining state claims is displaced when "substantial

judicial resources have already been committed" or "it is absolutely clear how the pendent claims can be decided.").

      1.     *IWA*

Levin asserts that Altisource failed to promote and terminated her because she refused to sponsor Parker's Illinois broker license application in violation of the Illinois Whistleblower Act ("IWA") (Count IV). *Elue v. City of Chi.*, No. 16 CV 9564, 2018 WL 4679572, at \*8 (N.D. Ill. 2018) (failure to promote is an adverse employment action under the IWA). Under Section 20 of the IWA, "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. Ann. 174/20. A plaintiff must establish that she (1) refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, and (2) her employer retaliated against her because of that refusal. *Schultz v. Ruan Transp. Corp.*, No. 22 C 4542, 2024 WL 2763739, at \*4 (N.D. Ill. May 30, 2024) (citing *Perez*, 31 F.4th at 574).

Levin fulfilled the first prong when she refused to endorse Parker's Illinois managing broker license application because endorsement would have violated Illinois broker licensing laws, 22 ILCS 454/5-60(a)(3) and 69 Ill. Amd. Code 1450.530(a)(3) since Parker was unqualified. [Dkt. 91 at 6.][9] Altisource does not

---

[9]     Levin cannot bring a retaliation claim under Illinois common law or the IWA based on her fraud-related allegations because they relate to violations of New Jersey law, not Illinois law. *Perez*, 31 F.4th at 574–75 ("[T]he district court correctly concluded that a plaintiff may not predicate a common-law retaliatory discharge claim under Illinois law on the New York regulation.").

dispute that Levin refused to endorse Parker as a managing broker. [*See* Dkt. 103, ¶ 17.] Nor does it dispute that she raised this issue to Legendre repeatedly. [*Id.* at ¶¶ 12, 16.] It only disputes that this is reason Legendre did not promote or retain Levin.

Levin argues that Altisource's reasons are pretextual based on Legendre's negative reaction to Levin's refusal to sponsor Parker. Levin first refused to sponsor Parker in September 2019 when her application indicated that she was unqualified to be an Illinois managing broker. [*Id.* at ¶ 10.] Parker resubmitted the application and changed her information to represent that she actually was qualified. [*Id.* at ¶ 11.] The discrepancy concerned Levin and she told Legendre as much in January 2020. [*Id.* at ¶ 12.] Legendre said he would investigate it, [*id.*], but there is no indication that he did. Instead, he continued to follow up with Levin on the status of the application and told her it seemed "harmless to sign." [*Id.* at ¶ 13.] After Levin had Parker send her licensure history to the Illinois Realtors Association, Legendre admonished her for contacting an external agency because it could bring "scrutiny" onto RHSS. [*Id.* at ¶¶ 13, 15.] He also gave Levin a "formal notification that you [Levin] will not deviate from the company's established process." [*Id.* at ¶ 15.] Legendre also seemingly misrepresented that Angela Flores in Legal Compliance had no issue with Parker's application, though Flores came back with questions about the discrepancy. [*Id.* at ¶ 16.] Making inferences in Levin's favor, Legendre strongly disagreed with Levin's approach and was focused on getting Parker sponsored despite knowing she was unqualified. A jury could reasonably find based on this evidence

31

that Legendre ignored compliance issues associated with Parker's application and pressed Levin to do so as well. This could furnish a motivation to retaliate.

As discussed, *supra* Part III.A.1, Levin hasn't presented evidence that she was clearly qualified for Broker II—based on Legendre's observations, she lacked the softer leadership skills required for promotion. But because Legendre admonished Levin when she refused to sponsor Parker's application (and violate Illinois law in the process) and repeatedly pushed her to do so, a reasonable jury could conclude that his decision a couple months later not to promote her was retaliation for that action. *See Dunn v. Hamra Enters.*, No. 20 C 04329, 2022 WL 4291028, at *6 (N.D. Ill. Sept. 16, 2022) (negative response by management to complaints undercut argument that adverse employment action was related to qualifications). Altisource argues that the two events—the Parker incident and failure to promote—are not close enough in time to infer causation because the former occurred in September 2019 and the latter in January 2020. [Dkt. 102 at 14.] But as Levin points out, discussions with Legendre about Parker's application continued until January 2020. [Dkt. 91 at 7.] Therefore, timing does not cut against an inference of retaliation.

Similar reasoning applies to Levin's termination, which occurred just a few months after she was denied promotion. [*Id.*]; *see Elue*, 2018 WL 4679572, at *8 (finding five months between protected activity and adverse employment action probative of retaliation). Although Altisource asserts that Levin was terminated because she had redundant licenses and few assets that would be affected, there is sufficient evidence of pretext to deny summary judgment. Whereas Levin could not

32

identify any male or non-Jewish comparator to show discriminatory motive, she does point to a handful of other less qualified employees who were retained instead of her. For example, Levin had the same (and more) licenses as Sylvia Parker and Lori Brown, yet they were not only retained but also approved to obtain licenses in states that Levin already had. [Dkt. 103, ¶ 46; Levin Decl. ¶¶ 30, 32, 34.][10] Legendre could not specify why Parker was retained, [Dkt. 103, ¶ 47], and Altisource did not attempt to explain why Brown was retained. As discussed, *supra* Part III.A.2., Altisource also changed stances on whether performance was included in the RIF evaluation, which is indicative of dishonesty. *Liu*, 817 F.3d at 316. Taken together with Legendre's reaction to the Parker application, there is sufficient evidence of pretext to defeat summary judgment.

### 2. Illinois

Levin brings a similar retaliation claim under Illinois common law. Retaliatory discharge requires that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy," which includes whistleblowing. *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019) (quoting *Turner v. Mem'l Med. Ctr.*, 233 Ill.2d 494, 331 Ill.Dec. 548, 911 N.E.2d 369, 374 (2009)). The *McDonnell Douglas* framework does not apply to these claims; rather, a plaintiff must first 'proffer[ ] sufficient evidence from which a reasonable jury could infer that the employer was improperly

---

[10] Levin's statements about Parker and Brown's licenses are admissible because she explained how these facts were within her personal knowledge. [*See* Dkt. 93-3 ("Levin Declaration") at ¶¶ 30, 32, 34.].

motivated' before the employer is required to provide a legitimate reason for the termination." *Perez*, 31 F.4th at 571 (quoting *Gordon v. FedEx Freight, Inc.*, 674 F.3d 774, 774 (7th Cir. 2012)). "[T]o prove causality, the plaintiff must show more than a sequential connection . . . Rather, the plaintiff has the burden of affirmatively show[ing] that the discharge was primarily in retaliation for his exercise of a protected right." *Walker*, 915 F.3d (internal citation omitted). Causation may be inferred from circumstantial evidence, including "(1) suspicious timing, ambiguous statements or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action." *Dunn*, 2022 WL 4291028, at *6 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973 (7th Cir. 2012)).

Although retaliation claims under IWA and common law are distinct, the analysis can overlap. *Perez v. Staples Cont. & Com. LLC*, 2020 WL 6448296, at *11 (N.D. Ill. Nov. 3, 2020) *aff'd*, 31 F.4th 560. They do here. For the reasons above, there is sufficient evidence of pretext that a reasonable jury could find that Legendre terminated Levin primarily because she refused to sponsor Parker's application and not because she was more redundant than other employees.

### 3. *New Jersey*

Levin's final claim alleges retaliatory discharge under New Jersey common law (Count VII). An employer may not discharge an employee who "refused to perform an act that is a violation of a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980). So-called "*Pierce* claims" often occur when an employer

terminates an employee for their resistance to or disclosure of an employer's illicit conduct. *Arterbridge v. Wayfair, LLC*, No. 1:21-CV-13306, 2022 WL 577956, at *5 (D.N.J. Feb. 25, 2022), *aff'd*, No. 22-1547, 2023 WL 3243986 (3d Cir. May 4, 2023). A direct complaint to senior management, as opposed to an external entity, is sufficient disclosure to support a *Pierce* claim. *Dillin v. Constr. & Turnaround Servs.*, LLC, No. CIV.A. 14-8124 ES, 2015 WL 5545236, at *8 (D.N.J. Sept. 18, 2015). But an employee must do more than complain—they must also take "action reasonably calculated to prevent the objectionable conduct." *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 111, 961 A.2d 1167, 1184 (2008).

Levin claims that Altisource terminated her because she refused to sign off on fraudulent prices adjustments in New Jersey, which would have violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2. [Dkt. 91 at 6, 10; Dkt. 103, ¶ 21.] She also complained about fraud she observed via email to Legendre, Legal Compliance, and senior brokers. [Dkt. 103, ¶ 20.][11] In response, Legendre told Levin to stop complaining to him. [*Id.* at ¶ 23.]

Altisource disputes the causation element of Levin's claim. It argues that it is "nonsensical" that Levin would have been terminated for reporting fraud because discovering and reporting fraud benefits the company. [Dkt. 102 at 13.] Altisource

---

[11] Altisource objects that there is no foundation for these facts because Levin admitted she lacks documentation of her complaints. [Dkt. 103, ¶¶ 20–21.] But her fact statements are based on personal knowledge and on Rembish's testimony that he was copied on and saw at least some of Levin's emails complaining about the fraud. [Rembish Dep. at 32:24–37:13.] Depositions based on personal knowledge can create issues of fact at summary judgment. *Foster*, 52 F.4th at 320. Altisource argues that Rembish is not credible because he is "close friends" with Levin, but credibility is for the jury to decide. [Dkt. 102 at 14.]

also points to the fact that it eventually fired employees involved in the fraud and filed lawsuits against them. [*Id.* at 13–14.] Perhaps a jury will agree with these characterizations, but at summary judgment the Court must draw reasonable inferences in Levin's favor. On this record, a reasonable factfinder could conclude that employees acting on behalf of the company tried to hide fraud even while it harmed the company as a whole. To this end, Levin points out that other employees who complained about fraud were also terminated, including James Rembish and Katherine Carter. [Dkt. 103, ¶ 26.] Steve Metarelis stated that the company took no action to investigate fraud when he reported it, and he resigned out of frustration. [*Id.* at ¶¶ 27–31.] Altisource, on the other hand, argues that it did eventually root out the problem, though only after the RIF and after Metarelis had left. [*Id.* at ¶ 32.] Which version to believe is for a jury to decide. Because genuine disputes of material fact remain about whether Levin refused to participate in fraud and reported it, and whether she was fired for these acts, summary judgment is denied.

**V.  Conclusion**

For these reasons, Altisource's motion for summary judgment is granted in part and denied in part. It is granted as to Levin's federal discrimination, harassment, and retaliation claims under Title VII and the IHRA (Counts I, III, and V) and denied as to her retaliation claims under the IWA and Illinois and New Jersey common law (Counts IV, VI, and VII). Levin's age discrimination claims are also voluntarily dismissed (Counts II, III, and V).

Enter: 22-cv-0389
Date:  November 1, 2024

_____
Lindsay C. Jenkins
United States District Judge